UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI CIVIL DIVISION

CASE NO.

EDDIE I. SIERRA,

      Plaintiff,

vs.

MIAMI-DADE COUNTY PUBLIC SCHOOLS,

      Defendant.

_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

The Plaintiff, EDDIE SIERRA, by and through his undersigned counsel, hereby files his Complaint against the Miami-Dade County Public Schools, Florida for declaratory and injunctive relief, and states in support as follows.

### INTRODUCTION

1.    This is an action under Title II of the Americans with Disabilities Act of 1990 and under Section 505 of the Rehabilitation Act of 1973 through which Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act") is enforced, to redress unlawful disability-based practices and to make plaintiff Eddie Sierra whole. Defendant Miami-Dade County Public Schools ("MDCPS") is a public entity which denied Eddie I. Sierra access to Defendant's archived video for streaming on demand and live streaming of Defendant's School Board meetings on the basis of his disability, being hard of hearing and deaf. In so doing, MDCPS denied Eddie I. Sierra a fundamental right to observe and participate in the democratic process of self-government.

1

2.     MDCPS makes this online content which constitutes programs, services and activities that it provides to anyone who accesses their website.  However, this content is not available for persons who are deaf or hard of hearing due to barriers to access, including but not limited to closed captioning 28 CFR §35.130.

3.     Qualified or otherwise qualified individuals who are deaf require auxiliary aids or services, such as closed captioning services, to meaningfully access the online audiovisual content and audio content.   Much of MDCPS's content is either not captioned, or inaccurately or unintelligently captioned.

4.     Plaintiff brings this action against the MDCPS to enforce the requirement of Section 504 of the Rehabilitation Act requiring that a public entity receiving federal financial assistance, which the MDCPS receives each year, must not deny persons with disabilities the benefits of its programs, services and activities. [1]

5.     By failing to provide auxiliary aids or services, MDCPS deprives the deaf and hard of hearing individuals the benefits of its online content, a benefit afforded to non-disabled individuals, thereby increasing the sense of isolation and stigma that the ADA and Section 504 were meant to redress for individuals with disabilities.

6.     Plaintiff requested that MDCPS provide auxiliary aids and services, including but not limited to closed captions, for its online content in a timely and accurate fashion. To date, MDCPS has not provided closed captions or any other auxiliary aids or services for its online audiovisual content.

7.     MDCPS's denial of much of its publicly available online content to deaf and hard of hearing persons violates Section 504 of the Rehabilitation Act and Title II of

the ADA.

8.      Accordingly, Plaintiff seeks injunctive and declaratory relief to ensure that deaf and hard of hearing individuals have equal, effective and timely access to MDCPS's publicly available online content, and other damages as pled infra.

## JURISDICTION AND VENUE

9.      Plaintiff brings this action under sections 12132 and 12133 of the ADA, 42 U.S.C. §§12132 and 12133 incorporating by reference the remedies, procedures and rights under the Rehabilitation Act, 29 U.S.C. §§794 and 794a(a)(2) and (2)(b), and under section 505 of the Rehabilitation Act, which enforces Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794 and 794a(a)(2) incorporating the remedies, rights and procedures set forth in section Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d et. seq.

10.     This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. §12188. This Court's jurisdiction is proper under 28 U.S.C. Section 451, 1331, and 1343.

11.     On best information and belief, MDCPS's unlawful practices have occurred since at least 2006 and continue to occur in the Southern District of Florida.

12.     Plaintiff has visited Defendant's website in the past including December 7, 2016 and intends to continue to visit Defendant's website in the immediate future. Defendant's Website constitutes a "Program and Activity" under the Rehabilitation Act 29 U.S.C. §794(b)(2)(B).  However, unless Defendant is required to eliminate the access barriers at issue, and required to change its policies so that access barriers do

---

[1] See 29 USC §794(a)

3

not reoccur on Defendant's website, Plaintiff will continue to be denied full access to the website.

13.     Plaintiff is expressly authorized to bring this action under the Americans with Disabilities Act (ADA) 42 U.S.C. Sections 12132 and 12133, incorporating by reference the remedies and procedures and rights under the Rehabilitation Act, 29 U.S.C. Section 794 and 794a(a)(2) and under Section 505 of the Rehabilitation Act which enforces Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794 and 794a(a)(2) incorporating the remedies, rights and procedures set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d et. seq.  Plaintiff has complied with all conditions precedent to bring this action.

## PARTIES

14.     The Plaintiff is an individual with a disability in that Plaintiff is deaf. He is a disabled rights advocate serving on disability rights boards for the City of Miami Beach and Miami-Dade County. He is a resident of Miami, Florida and is substantially limited in the major life activity of hearing. Plaintiff does not understand or use sign language.

15.     Plaintiff is an otherwise qualified or qualified individual with a disability in that Plaintiff is qualified to access MDCPS's video streaming program or service.

16.     Due to his disability, the Plaintiff requires auxiliary aids and services, such as closed captioning services, to be able to participate in and receive the benefit of the MDCPS's online videos and content.

17.     MDCPS is the fourth-largest school district in the United States. It is a public entity within the meaning of Title II of the Americans with Disabilities Act and at all times relevant has been a recipient of federal funds under the Rehabilitation Act of

4

1973. MDCPS is a body corporate and political subdivision of the State of Florida.

## GENERAL ALLEGATIONS

18.     MDCPS provides a video streaming service through its online portal where any interested persons are able to stream live or review archived content. The streaming features the MDCPS receiving information and statements from the public, negotiating and voting on issues concerning taxes, spending, and education policy. The School Board's meetings have a direct effect on the citizens in the region.  The archived content has valuable information about MDCPS and education activities and policies.

19.     Persons who are not limited in the major life activity of hearing are able to watch, listen to and participate in the MDCPS's legislative decision-making activities via the online streaming service. They are also able to stream other videos regarding education and Miami-Dade public schools.

20.     Interested persons can view MDCPS meetings in real-time. Multiple live-broadcasts via the streaming service are not provided with auxiliary aids and services for people with hearing disabilities who do not use sign language, including but not limited to closed captioning services.

21.     The Plaintiff Sierra is prevented from observing and participating in the MDCPS's meetings because of his disability.

22.     Plaintiff will return to the MDCPS website in the near future to use its video archives and live-streaming services of future school board meetings, but for the unlawful barrier created by MDCPS's refusal to provide closed captioning services for its archived videos and live-streaming services.  As a result, Plaintiff has been barred from access to the MDCPS's online audiovisual and audio content.

5

23.     On or about September 29, 2016, Plaintiff, in his role as an advocate for disabled persons, gave notice of his request to MDCPS Superintendent, Alberto M. Carvalho, that MDCPS provide auxiliary aids and services including but not limited to closed captioning of videos on its website and closed captioning for its live School Board meetings.  Plaintiff requested closed captioning because he does not use or understand sign language.

24.     MDCPS has failed to provide Plaintiff with any of the requested auxiliary aids and services.

25.     On December 7, 2016, Plaintiff was denied access to MDCPS's archived videos.   The archived videos remain inaccessible because they are not closed captioned.

26.     MDCPS also makes video and audio content available through its social networking webpages and profiles on Facebook.com and Twitter.com. These video and audio recordings are inaccessible to Plaintiff because of barriers to access to persons with disabilities for hearing.

27.     Defendant has not provided auxiliary aids or services, including but not limited to closed captioning services, for those video and audio recordings Defendant has made available via its social media webpages. As of this filing, those video and audio recordings remain inaccessible to Plaintiff.

28.     At all relevant times, MDCPS is a public entity as defined in 42 U.S.C. Section 12131(1) of the ADA, in that it is a local government entity, a body corporate and political subdivision of the State of Florida.

29.     At all times relevant, the MDCPS has been a recipient of federal financial assistance including budget year 2016-17 where MDCPS projected that it would receive $502,481,776 million in federal funds.

30.     Since at least 2006, MDCPS has engaged in unlawful practices in violation of the ADA Section 12132; 28 C.F.R. 35.130(a)-(b)(1), 28 C.F.R. 35.160(a) and (b)(2) and in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794. These practices include but are not limited to denying Eddie I. Sierra, an individual with a disability who, with or without reasonable modifications to the rules, policies or practices; the removal of communication barriers; or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services to participate in programs or activities provided by MDCPS access to the on demand and live streaming video services of the MDCPS.

31.     MDCPS has acted with deliberate indifference to the provisions of the Rehabilitation Act and Title II of the ADA in regards to the unlawful practices described herein because MDCPS is aware of the availability of auxiliary aids and services and does not provide any such services, including but not limited to closed captioning, for its online video and audio content, and has failed to provide such auxiliary aids and services upon notice of Plaintiff's request for the same.

32.     The international website standards organization, W3C, has published widely-accepted guidelines ("WCAG 2.0 AA") for making Websites accessible to individuals with disabilities. These guidelines have been endorsed by the United States Department of Justice and by Federal Courts.

33.     MDCPS's website and online video and audio recordings do not even remotely comply with the WCAG 2.0 AA guidelines.

34.     Plaintiff has retained J. Courtney Cunningham, PLLC and David B. Mishael, P.A. as his legal counsel in this action, and has agreed to pay said law firms reasonable attorneys' fees and costs of litigation.

## COUNT I
## VIOLATION OF TITLE II OF THE ADA

35.     Plaintiff adopts the allegations in paragraphs 1 through 34 as if fully set forth herein, and would further state:

36.     Defendant's website is a place of service, program or activity within the definition of Title II of the Americans with Disabilities Act.

37.     On December 7, 2016, Plaintiff was denied access to Defendant's streaming audiovisual and audio content available on Defendant's website.

38.     Plaintiff had previously requested from Defendant an auxiliary aid and service for use of its Website, including streaming video content on September 29, 2016.

39.     Defendant failed to provide an auxiliary aid and service for Plaintiff after receipt of Plaintiff's request for the same.

40.     Defendant has denied Plaintiff the opportunity to participate in or benefit from the programs, services and activities afforded to non-disabled persons and persons who are not hearing-impaired.

8

41.      Defendant has denied Plaintiff these opportunities due to Plaintiff's disability, i.e. his hearing impairment.

42.     Defendant refused to allow Plaintiff to participate in a service, program, or activity due to Plaintiff's disability.

43.     Defendant has failed to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied participation in a service, program or activity, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

44.     Defendant has failed to provide auxiliary aids and services, including but not limited to "qualified interpreters on-site or through video remote interpreting (VRI) services; notetakers; real-time computer-aided transcription services; written materials; exchange of written notes; telephone handset amplifiers; assistive listening devices; assistive listening systems; telephones compatible with hearing aids; closed caption decoders; open and closed captioning, including real-time captioning; voice, text, and video-based telecommunications products and systems, including text telephones (TTYs), videophones, and captioned telephones, or equally effective telecommunications devices; videotext displays; accessible electronic and information technology; or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing."[2]

45.     Providing auxiliary aids and services as stated in paragraph 44 above would not result in any undue burden to Defendant.

46.   Providing auxiliary aids and services as stated in paragraph 44 would not fundamentally change the nature of the service, program or activity.

47.   Plaintiff remains unable to fully access the Defendant's website and its content for as long as Defendant fails to comply with the ADA and WCAG 2.0 AA standards.

WHEREFORE the Plaintiff requests relief as set forth below:

A.   A Declaratory Judgment finding that, as of the commencement of this action, Defendant was in violation of the specific requirements of Title II of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that its websites are fully accessible to, and independently usable by, disabled and hearing-impaired individuals;

B.   A permanent injunction pursuant to 42 U.S.C. §12188(a)(2) and 28 CFR §35.106(a)1 and (b)1 which directs Defendant to take all steps necessary to bring its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Website is fully accessible to, and independently usable by, hearing-disabled individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

---

[2] 28 C.F.R. §35.104(1)

C.  That Defendant retain a qualified consultant acceptable to Plaintiffs ("Mutually Agreed Upon Consultant") who shall assist it in improving the accessibility of its Website so that it complies with version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0 AA");

D.  That Defendant work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;

E.  That Defendant work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis;

F.  That Defendant work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis; and

G.  That Defendant work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Website, along with an e-mail address and toll free phone number to report accessibility-related problems.

H.  Payment of costs of suit;

I.      Payment of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. §12205 and 28 CFR §36.505; and

J.      Any and all other relief this Court deems necessary and just.

## COUNT II

## VIOLATION OF THE REHABILITATION ACT OF 1973

48.     Plaintiff adopts the allegations in paragraphs 1 through 34 as if fully set forth herein.

49.     Defendant has online video content and a streaming service on its Website where live MDCPS meetings and previously recorded videos can be viewed.  The vast majority of these videos are not closed captioned and none of the live streams are closed captioned.

50.     At all times relevant, the MDCPS has been a recipient of federal financial assistance bringing MDCPS under the Rehabilitation Act which prohibits discrimination against qualified or otherwise qualified individuals in the recipient's "programs or activities".

51.     The Rehabilitation Act defines "program or activity" to mean all of the operations of a local educational agency, system of vocational education or other school system.  Defendant is a local education agency, system of vocational education or other school system.  Defendant's publicly available online content and streaming services is a "program or activity" within the meaning of the Rehabilitation Act. 29 U.S.C. Section 794(b)(2)(B).

52.    On or about September 29, 2016, Plaintiff requested that MDCPS provide effective communications by granting auxiliary, aids and services of closed captioning of videos on its website and closed captioning of its live School Board meetings.

53.    MDCPS has not responded to the request for auxiliary aids and services and MDCPS has failed to provide Plaintiff with the auxiliary aids and services.

54.    December 7, 2016, Plaintiff was denied access to MDCPS's video content solely by reason of his disability.  This denial of access to Defendants "program or activity" subjected Plaintiff to discrimination, excluded Plaintiff from participation in the program or activity and denied Plaintiff the benefits of Defendants video streaming service.   As of this filing, the videos on the website remain uncaptioned and inaccessible to qualified or otherwise qualified persons.

55.    The international website standards organization, W3C, has published widely-accepted guidelines ("WCAG 2.0 AA") for making Websites accessible to individuals with disabilities. These guidelines have been endorsed by the United States Department of Justice and by Federal Courts.

56.    MDCPS's website and online video and audio recordings do not even remotely comply with the WCAG 2.0 AA guidelines.

57.    MDCPS also makes online content available on its Facebook page and on Twitter. It also distributes video content through these social media platforms.  These videos are also inaccessible to Plaintiff because they lack closed captions.   As of this filing, the videos remain uncaptioned and inaccessible.

58.    Plaintiff is expressly authorized to bring this action under the Rehabilitation Act of 1973, 29 U.S.C. Section 794 and 794a(a)(2) and (2)(b), and under Section 505 of

13

the Rehabilitation Act which enforces Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794 and 794a incorporating the remedies, rights and procedures set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d et. seq.59. At all times relevant, the MDCPS has been a recipient of federal financial assistance having received federal funds bringing MDCPS under the Rehabilitation Act.

60.     Since at least 2006, MDCPS has engaged in unlawful practices in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794. These practices include but are not limited to denying Eddie I. Sierra, an individual with a disability who, with or without reasonable modifications to the rules, policies or practices; the removal of communication barriers; or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services to participate in programs or activities provided by MDCPS, access to the on demand and live streaming video services of the City.

61.     The unlawful practices complained of were and are done with deliberate indifference because Defendant's Superintendent of schools, a person with the ability to provide the auxiliary aids and services, did not provide the auxiliary aids and services nor did he suggest any other effective communication auxiliary aids and services.  In fact, Defendant did not respond to Plaintiff's request.

WHEREFORE the Plaintiff requests relief as set forth below:

A.     A Declaratory Judgment finding that, as of the commencement of this action, Defendant was in violation of the specific requirements of Title II of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that

14

its websites are fully accessible to, and independently usable by, disabled and hearing-impaired individuals;

B.     A permanent injunction pursuant to 42 U.S.C. §12188(a)(2) and 28 CFR §35.160(a)1 and (b)1 which directs Defendant to take all steps necessary to bring its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its website is fully accessible to, and independently usable by, hearing-disabled individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

C.     That Defendant retain a qualified consultant acceptable to Plaintiffs ("Mutually Agreed Upon Consultant") who shall assist it in improving the accessibility of its Website so that it complies with version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0 AA");

D.     That Defendant work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;

E.     That Defendant work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's website continues to comply with WCAG 2.0 AA on an ongoing basis;

F.     That Defendant work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis; and

G.     That Defendant work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its website, along with an e-mail address and toll free phone number to report accessibility-related problems.

H.     Payment of costs of suit;

I.     Payment of reasonable attorneys' fees and costs, pursuant to 29 U.S.C. §794(a)(b) of the Rehabilitation Act; and

J.     Any and all other relief this Court deems necessary and just.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated this 10th day of January, 2017.

Respectfully Submitted,

David B. Mishael, P.A.
FBN. 376442
8603 S. Dixie Highway, Suite 315
Miami, FL 33143
Tel: (305) 668-3226

By: **/s/ David B. Mishael**
Email: dbmishael@aol.com
Secondary: dbmishaelpa@gmail.com

16

J. Courtney Cunningham PLLC
Co-Counsel to Plaintiff
FBN. 628166
8603 S. Dixie Highway, Suite 306
Miami, FL 33143
Tel: (305) 351-2014

**By: /s/ Juan Courtney Cunningham**
Email: cc@cunninghampllc.com